UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

UNITED STATES OF AMERICA,

                                           **MEMORANDUM AND ORDER**

            - against -
                                           15-CR-103 (KAM)

ANDREW BARRETT,
                  Defendant.

----------------------------------------X

**MATSUMOTO, United States District Judge:**

On March 11, 2015, a grand jury in the Eastern District of New York returned an indictment charging Andrew Barrett ("defendant"), a licensed pharmacist, with health care fraud, six counts of submitting false claims to the United States, eight counts of money laundering involving the proceeds of the charged health care fraud, three counts of filing a false personal income tax return for the years 2010-2012, three counts of filing a false corporate tax return for the years 2010-2012, and three counts of aiding and assisting in the preparation of false corporate tax returns for the years 2010-2012. (*See* ECF No. 18, Indictment.) A superseding indictment (for purposes of this opinion, "the indictment") adding eight additional money laundering counts was returned on October 28, 2015. (*See* ECF No. 56, Superseding Indictment ("Indictment") ¶¶ 29-42.)

Defendant has filed pre-trial motions seeking dismissal of the tax-related counts (the "Tax Counts"), a bill of particulars, and certain early evidentiary disclosures from

the government. (ECF No. 46, Defendant's Pre-Trial Motions for Severance, a Bill of Particulars, and Other Relief ("Def. Mot.").) The government subsequently filed an opposition brief (ECF No. 50, Response in Opposition ("Gov't Resp.")), the defendant filed a reply (ECF No. 58, Letter Reply ("Def. Reply")), and the government filed a sur-reply. (ECF No. 60, Reply to Response ("Gov't Sur-Reply.").)

Separately, the government filed a motion in limine seeking to introduce evidence related to the Tax Counts, in the event the court were to dismiss those counts for lack of venue. (ECF No. 47, Motion in Limine ("Gov't Mot.").) Defendant responded to that motion. (ECF No. 48, Memorandum in Opposition to Motion in Limine ("Def. Resp.").) For the reasons discussed below, defendant's motions are GRANTED in part and DENIED in part. The government's motion is GRANTED.

## BACKGROUND

The indictment alleges that defendant owned and operated several pharmacies in New York. (Indictment ¶¶ 21-24.) He was the owner and sole proprietor of a Queens-based pharmacy that operated under the name Economy Drug and Surgical Pharmacy ("Economy Drug"). (*Id.* ¶ 21.) Defendant also owned EDS Healthcare Pharmacy Inc. ("EDS"), a Floral Park-based pharmacy that was not open to the public, and Clarkstown Pharmacy Inc.

("Clarkstown"), a pharmacy in West Nyack. (*Id.* ¶¶ 22, 24.)
Defendant's wife was the owner and chief executive officer of
B&P Pharmacy Inc. ("B&P Pharmacy"), a Bronx-based pharmacy. (*Id.*
¶ 23.) Economy Drug and EDS were located in the Eastern District
of New York ("Eastern District"), and Clarkstown and B&P were
located in the Southern District of New York ("Southern
District").

The indictment charges that between January 2011 and
December 2012, defendant — "together with others" — "submitted
and caused the submission of claims for reimbursement to
Medicare and Medicaid for drugs purportedly dispensed from
Economy Drug and EDS which were in fact never dispensed to
Medicare or Medicaid beneficiaries." (*Id.* ¶ 25.) Three
undercover patients entered Economy Drug with prescriptions that
also allowed for refills. (*Id.; see also* Gov't Resp. at 2.)
After defendant properly filled and billed the initial
subscriptions, the undercover agents did not request or receive
refills of their prescriptions. (Indictment ¶ 25.) The
government contends that defendant nevertheless billed Medicaid
for the additional refills. (*Id.*)

The government claims that defendant failed to
purchase "sufficient levels of pharmaceutical products from
wholesale distributors to meet the purported demand at Economy

Drug and EDS" and that he improperly billed health insurers including Medicare and Medicaid in excess of approximately $5.8 million. (*Id.* ¶ 26.) Between 2011 and 2012, Economy Drug was, according to the government, the third-highest biller of Medicare for HIV medication in Queens. (*Id.* ¶ 21.)

Between April 2011 and December 2012, defendant allegedly used a portion of the illegal proceeds he received from causing Economy Drug to overbill Medicare and Medicaid to purchase pharmaceutical products for B&P and Clarkstown. (*Id.* ¶ 27.) Between January 2010 and approximately December 2012, the indictment charges that defendant withdrew funds from B&P and Clarkstown "for his personal benefit while falsely claiming the funds were used to pay business related expenses," but he did not claim the funds as his personal income. (*Id.* ¶ 28.)

## DISCUSSION

Defendant seeks (1) dismissal of the Tax Counts for lack of venue; (2) a bill of particulars providing the identities of unindicted co-conspirators[1] and more information about the allegedly unauthorized refill prescriptions; and (3)

---

[1] Although the indictment does not charge a conspiracy, it repeatedly alleges that defendant operated "together with others." (*See* Indictment ¶¶ 25, 30, 32, 34, 36.) Accordingly, the court will occasionally refer to these other individuals as "unindicted co-conspirators."

disclosure of certain evidence 60 days in advance of trial.[2] The government seeks to introduce evidence of defendant's alleged tax fraud regardless of whether the Tax Counts are dismissed. The court will address these issues in turn.

## I.  *Venue*

Defendant first claims that venue for the Tax Counts is not proper in the Eastern District, and although he initially sought to transfer those counts to the Southern District, he now seeks dismissal of the Tax Counts for improper venue. *See* Fed. R. Crim. P. 12(b)(3)(A)(i) (permitting a motion alleging "improper venue"). The government claims that defendant's motion is untimely and without merit. For the reasons that follow, the court concludes that the motion is timely and venue for the Tax Counts is proper in the Eastern District.

### A.  *Timeliness*

The government contends that defendant's initial motion to transfer venue was not timely, arguing that 18 U.S.C. § 3237(b) precludes defendant's current venue challenge because

---

[2] Defendant also requested early disclosure of certain *Brady* material related to Harold Smith, a former Economy Drug employee who defendant contends will be the "Government's key witness at trial." (Def. Reply at 6.) The government subsequently disclosed this material. (*See* ECF No. 61.) That aspect of defendant's motion is therefore moot. In addition, defendant requested disclosure of the government's Fed. R. Evid. 404(b) evidence. (Def. Mot. at 7.) The government identified that evidence in its motion in limine (*see* Gov't Mot. at 1-5), and so this request, too, is moot.

it was not filed within 20 days after his initial arraignment. (*See* Gov't Resp. at 5-6; Gov't Sur-Reply at 5.) Defendant argues that § 3237(b) is inapplicable. (Def. Reply at 2-4.) Section 3237(b) provides in relevant part:

> [W]here venue for prosecution of an offense described in [§ 7206(1) or (2)] . . . is *based solely on a mailing to the Internal Revenue Service*, and prosecution is begun in a judicial district other than the judicial district in which the defendant resides, he may upon motion filed in the district in which the prosecution is begun, elect to be tried in the district in which he was residing at the time the alleged offense was committed:
>
> Provided, That the *motion is filed within twenty days after arraignment* of the defendant upon indictment or information

§ 3237(b) (emphasis added).

Defendant first formally objected to venue in the Eastern District over five months after his arraignment on the initial indictment, well outside the 20-day window prescribed by § 3237(b). (*See* Def. Mot. at 2; Gov't Resp. at 6.) Nothing in the indictment, however, indicates that the Tax Counts are based "solely on a mailing to the Internal Revenue Service," a prerequisite to the applicability of 18 U.S.C. § 3237(b). *See In re United States*, 608 F.2d 76, 81 (2d Cir. 1979) ("We construe § 3237(b) to apply, at most, to tax prosecutions that involve the use of the mails in the sense that a mailing . . . is the basis on which the prosecution seeks to establish venue in a

district other than the taxpayer's district of residence."); *see also United States v. Humphreys*, 982 F.2d 254, 260 (8th Cir. 1992) ("Venue in this instance was not based *solely* on a mailing to the IRS, but upon the *commission* of the crime in the Northern District of Iowa.").

Indeed, the indictment does not even mention use of the mail in any of the Tax Counts. (*See* Indictment ¶¶ 38, 40, 42.) Nor does the government in its briefing suggest that venue for the Tax Counts is "based solely on a mailing" to the IRS. Consequently, 18 U.S.C. § 3237(b) is inapplicable and defendant's failure to object within 20 days of arraignment under that provision is irrelevant to whether venue is proper under § 3237(a). The court must therefore address the merits of defendant's request for dismissal for lack of venue.

**B.     *Proper Venue***

Arguing improper venue, defendant moves for a dismissal of Counts 24 through 32, the tax fraud charges. Upon review of the indictment, the parties' submissions, and the current record, the court finds that venue for the Tax Counts is likely to be proven by a preponderance of the evidence at trial. The court therefore denies defendant's motion to dismiss without prejudice to a renewal at the close of the government's trial evidence pursuant to Fed. R. Crim. P. 29(a).

Counts 24 through 26 charge defendant with filing three false personal tax returns for the years 2010, 2011, and 2012, and counts 27 through 29 charge him with filing three false corporate income tax returns in the same period, all in the Southern District. *See* 26 U.S.C. § 7206(1) (criminalizing "willfully mak[ing] and subscrib[ing] any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which [a defendant] does not believe to be true and correct as to every material matter"). Counts 30 through 32 charge defendant with aiding and assisting the preparation of false tax returns in the Southern District. *See* 26 U.S.C. § 7206(2) (providing for criminal liability where an individual "[w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document").

*1.   Legal Standard*

In a federal criminal case, venue "is controlled by a complex interplay of constitutional provisions, statutes, and rules." 2 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 301 (4th ed. 2015) [hereinafter *Wright & Miller*]. Because appropriate venue in criminal proceedings was of serious concern to the Nation's founders, the Constitution "twice safeguards the defendant's venue right." *United States v. Cabrales*, 524 U.S. 1, 6 (1998); *see* U.S. Const. art. III, § 2, cl. 3 ("Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed."); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed.").

Those venue rights are also reflected in the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 18 ("[T]he government must prosecute an offense in a district where the offense was committed."). Further highlighting the significance of venue is the requirement that venue be proper with respect to each count when a defendant is charged with multiple offenses. *See United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989). The purpose of these legal protections is

to insulate criminal defendants from the "bias and inconvenience that may attend trial in a forum other than one in which the crime was committed." *United States v. Rowe*, 414 F.3d 271, 277 (2d Cir. 2005).

Many crimes are committed only in a single district. In that scenario, venue is not generally in dispute. *See United States v. Ramirez*, 420 F.3d 134, 139 (2d Cir. 2005) ("When a crime consists of a single, non-continuing act, the proper venue is clear: The crime is 'committed' in the district where the act is performed." (internal quotation marks and citation omitted)). Other offenses, however, occur in multiple districts.[3] In those circumstances, 18 U.S.C. § 3237(a), the venue statute discussed above, often referred to as the "continuing offense" statute, provides guidance:

> [A]ny offense against the United States begun in one
> district and completed in another, or committed in
> more than one district, may be inquired of and
> prosecuted in any district in which such offense was
> begun, continued, or completed.

18 U.S.C. § 3237(a). Circuit courts, including the Second Circuit, have held that both 26 U.S.C. § 7206(1) and § 7206(2) are "continuing offenses" within the meaning of 18 U.S.C.

---

[3] The court recognizes that the indictment charges that the defendant committed the acts underlying the Tax Counts within the Southern District. Yet, as established in the government's submission, the charged conduct also occurred in and is interconnected with conduct in the Eastern District.

10

§ 3237(a). *See United States v. Rooney*, 866 F.2d 28, 31 (2d Cir. 1989) ("We have held that the continuing offense statute applies to section 7206(1) prosecutions . . . ."); *see also United States v. Shyres*, 898 F.2d 647, 657 (8th Cir. 1990) ("[B]ecause the continuing offense statute . . . applies to section 7206(1), venue also lies 'in any district in which such offense was begun, continued, or completed.'"); *United States v. Slutsky*, 487 F.2d 832, 839 (2d Cir. 1973) (same); *United States v. Hirschfeld*, 964 F.2d 318, 321 (4th Cir. 1992) (same with respect to § 7206(2)).

The Second Circuit, having recognized that "there is no single defined policy or mechanical test to determine constitutional venue," *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985), applies a "substantial contacts" test to evaluate the propriety of venue in any particular district. The substantial contacts test looks to "the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding . . . ." *Rowe*, 414 F.3d at 278 (internal quotation marks and citation omitted).[4]

---

[4] Contrary to defendant's suggestion otherwise (Def. Reply at 2), multiple courts have applied the "substantial contacts" test in evaluating the propriety of venue for tax prosecutions. *See United States v. Martino*, No. 00-CR-389, 2000 WL 1843233, at *2-3 (S.D.N.Y. Dec. 14, 2000); *United States v. Strawberry*, 892 F. Supp. 519, 521

In a tax prosecution under § 7206(1) or § 7206(2), venue "may lie not only where the return was made and subscribed, but also where filed, or where the preparer received information from the defendant even though the defendant signed and filed the returns elsewhere." *Rooney*, 866 F.2d at 31 (internal quotation marks and citation omitted); *United States v. Marrinson*, 832 F.2d 1465, 1474-75 (7th Cir. 1987); *see also United States v. Pace*, 314 F.3d 344, 352 (9th Cir. 2002) ("The act of making a tax return commences when one prepares and furnishes information material to the return and continues until that information is received by the IRS. For such continuing offenses, venue is proper in any district in which the continuing conduct has occurred."). With respect to a § 7206(2) offense, venue is appropriate in any district in which any of the aiding or assisting took place. *See Hirschfeld*, 964 F.2d at 321.

Finally, the government bears the burden of proving the propriety of venue, *see United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011), but need only do so by a preponderance of the evidence. *See United States v. Rommy*, 506 F.3d 108, 118-

---

(S.D.N.Y. 1995). Defendant is correct, however, that the Second Circuit has "alternately applied and ignored the substantial contacts test." *United States v. Coplan*, 703 F.3d 46, 80 (2d Cir. 2012) (collecting cases).

19 (2d Cir. 2007). Circumstantial evidence can be sufficient. *United States v. Conteh*, 2 F. App'x 202, 203-04 (2d Cir. 2001) (unpublished) ("Venue may be proven by circumstantial evidence." (citing *United States v. Gargiso*, 456 F.2d 584, 588 n.5 (2d Cir. 1972))); *Shyres*, 898 F.2d at 657-58; 20A Fed. Proc., L. Ed. § 48:1592 ("[T]he absence of direct proof of venue will not defeat a conviction where an inference of venue may be drawn from circumstantial evidence.").[5]

### 2. *Analysis*

As an initial matter, the government does not explicitly contend that defendant filed or subscribed his return in the Eastern District of New York. In addition, the government does not argue that the tax preparer in this case received information in the Eastern District. Apparently, defendant resides in the Southern District, where he claims to have filed and subscribed his taxes, and where his accountant's office is located. (*See* Def. Reply at 2 ("Rockland County is both the county of defendant's residence, where the returns were

---

[5] Defendant's original motion to transfer venue pursuant to Fed. R. Crim. P. 21 placed the burden on him to establish grounds to do so. *See United States v. Stein*, 429 F. Supp. 2d 633, 645 (S.D.N.Y. 2006). However, without explanation, defendant's reply requests that his initial motion to transfer the Tax Counts to the Southern District be converted into a motion to dismiss them for improper venue under Fed. R. Crim. P. 12(b)(3)(A)(i). "Where venue is challenged on a pre-trial motion to dismiss, the Government's burden is limited to showing that the indictment alleges facts sufficient to support venue." *United States v. Peterson*, 357 F. Supp. 2d 748, 751 (S.D.N.Y. 2005).

subscribed, as well as the location of the accounting office where the returns were prepared.").)[6] Thus, the bases for venue explicitly articulated in *Rooney*, which defendant contends provides an exclusive list, are not present here. (*See id.* at 1-2.) *See Rooney*, 866 F.2d at 31 (recognizing that venue for a § 7206(1) count "may lie not only where the return was made and subscribed, but also where filed, or where the preparer received information from the defendant even though the defendant signed and filed the returns elsewhere." (internal quotation marks and citation omitted)).

The government asserts that the venue language in *Rooney* is non-exhaustive. (*See* Gov't Sur-Reply at 4.) According to the government, the tax fraud began in the Eastern District, because the alleged unlawful proceeds, upon which the tax charges are predicated, originated from Economy Drug (which was located in the Eastern District).[7] (*See id.* at 3-4.) But the

---

[6] Rockland County is in the Southern District. *See Blanco v. Snyder's of Hanover, Inc.*, No. 03-CV-385, 2003 WL 21939707, at *1 (S.D.N.Y. Aug. 12, 2003).

[7] The government's initial brief heavily relied on cases where motions to sever were denied. *See, e.g.*, *United States v. Biaggi*, 909 F.2d 662, 675-76 (2d Cir. 1990); *United States v. Turoff*, 853 F.2d 1037, 1041-43 (2d Cir. 1988). These cases, however, are not germane to determining whether venue exists in the first place, and defendant does not appear to be challenging the joinder of the tax charges. Venue must be proper for a particular count before an analysis about joinder would be appropriate. *See* Wayne LaFave et al., 4 Criminal Procedure § 16.1(f) (3d ed. 2007) ("Unless the statute or court rule establishing permissive joinder explicitly states otherwise, venue

logical conclusion of the government's position would establish venue for virtually all counts in a multiple-count fraud prosecution based solely on the locale where the underlying funds were derived, rather than the place where the charged conduct began, continued, or concluded. That approach was rejected by the Supreme Court in *Cabrales*.

In *Cabrales*, 524 U.S. at 4, the defendant deposited $40,000 with a Florida bank and, within a week, made four separate $9,500 withdrawals in Florida from that same bank. The funds were derived, however, from the unlawful distribution of cocaine in Missouri. *Id.* at 3-4. An indictment in the Western District of Missouri charged the defendant with money-laundering activity that the parties stipulated occurred entirely in Florida. *Id.* at 3. The government's theory in *Cabrales* was that venue for the money laundering offenses was proper "in the district in which the funds were unlawfully generated, even if

---

requirements are assumed to override that provision's allowance for joinder at the prosecutor's option. As a result, two offenses that could readily have been joined in a single prosecution if committed in a single district will have to be brought separately when committed in different districts."); *United States v. Nathanson*, 813 F. Supp. 1433, 1435 (E.D. Cal. 1993) ("The issue that is before the court is a matter of venue, not joinder. The fact that counts may be joined pursuant to [Fed. R. Crim. P.] 8(a) does not address whether such counts may be tried in the court in which the indictment has been returned."). The government may have a stronger case for joinder, because it would appear that the Tax Counts "are connected with or constitute parts of a common scheme or plan" within the meaning of Fed. R. Crim. P. 8(a).

the financial transaction that constitutes the laundering occurred wholly within another district." *Id.* at 5.

The Supreme Court rejected the government's position, explaining that the money laundering statute criminalized "only the financial transactions (acts located entirely in Florida), not the anterior criminal conduct that yielded the funds allegedly laundered."[8] *Id.* at 7. The Court acknowledged that "[w]henever a defendant acts 'after the fact' to conceal a crime, it might be said . . . that the first crime is an essential element of the second and that the second facilitated the first or made it profitable by impeding its detection." *Id.* at 7–8 (citation omitted). Nonetheless, the Court held that venue could not lie in Missouri based solely on the fact that the relevant funds originated from criminal activity in that state.[9]

---

[8] At least one other court had already recognized the importance of distinguishing between the locale where the funds were derived and the locale where the charged conduct occurred in the tax prosecution context. *See United States v. Hurwitz*, 573 F. Supp. 547, 550 n.10 (S.D. W. Va. 1983) ("In effect, the Government is equating the district wherein the Defendants' alleged scheme had, and perhaps may even continue to have, an impact, with the district wherein the Defendants committed the alleged offenses. This Court is unaware of any decision in a § 7206(2) prosecution which has either expressly, or tacitly accepted a venue theory akin to the one which the Government advances in the case at bar.").

[9] *Cabrales* is arguably distinguishable because here, Mr. Barrett, unlike the defendant in *Cabrales*, *see* 524 U.S. at 3–4, has been charged with participation in the criminal fraud scheme that generated the money in the government's chosen venue, and also allegedly

16

Some of the government's arguments in this case —
emphasizing the epicenter of the charged fraudulent schemes as
the Eastern District, and maintaining that "[w]ithout the acts
charged in the tax fraud counts, the defendant's fraud scheme
would have amounted to little" (Gov't Resp. at 5; *see also* Gov't
Sur-Reply at 4) — resemble the arguments rejected in *Cabrales*.
Moreover, the government's broad construction of the venue rules
is in some tension with the Constitution's protection of the
defendant's right to be tried for each individual crime in the
venue where that crime was committed. *See* U.S. Const. art. III,
§ 2, cl. 3; U.S. Const. amend. VI; *Beech-Nut Nutrition Corp.*,
871 F.2d at 1188.

Nevertheless, the court agrees with the government
that *Rooney*'s list of acts that would provide a basis for venue
for alleged violations of 26 U.S.C. § 7601(1) is non-exclusive.
In other prosecutions where tax counts were brought alongside
other substantive fraud counts, courts have held that a wider
variety of activities than those articulated in *Rooney* may
establish venue and trigger criminal tax liability. In *Pace*, for
example, the Ninth Circuit determined in a § 7206(1) prosecution
that "[t]he act of making a tax return commences when one

---

transferred the proceeds himself from that venue to another district.
(*See* Indictment ¶¶ 25-36.)

prepares and furnishes information material to the return and
continues until that information is received by the IRS." 314
F.3d at 352. In that case, the defendant responded in writing,
from the venue of prosecution (though he lived elsewhere), to a
questionnaire sent by his accountant, who worked in another
state. *Id.* In responding to his accountant, the defendant in
*Pace* included information essential to his tax return. *Id.* at
351-52. The court held that this provided a sufficient factual
basis to support venue.[10] *Id.* at 352.

Similarly, in a prosecution including a count alleging
a violation of 26 U.S.C. § 7206(2), the aiding and abetting tax
fraud statute, the Fourth Circuit held that the following acts
of aiding and abetting in the venue of prosecution could support
venue: applying for an extension for a tax return; sending a
letter to a co-conspirator's attorney discussing a potential
fraudulent lawsuit and a subsequent tax deduction; and claiming
false expenses on a return based in part on documents created in
the district. *See Hirschfeld*, 964 F.2d at 321.

Furthermore, in *Stein*, 429 F. Supp. 2d at 643-45, a
court in this circuit held that "the preparation of fraudulent

_____

[10] The Ninth Circuit's construction of 26 U.S.C. § 7206(1) has
been embraced within this circuit in at least one case. *See United
States v. Nicolo*, 523 F. Supp. 2d 303, 327 (W.D.N.Y. 2007), *aff'd*, 421
F. App'x 57 (2d Cir. 2011)

supporting documents, the creation of financial entities and the implementing of tax shelter transactions through those entities, and the concealment of the tax shelters from regulators" could support venue in a tax prosecution brought under 26 U.S.C. § 7201, a sister statute to § 7206 making it unlawful to "willfully attempt in any manner to evade or defeat any tax . . . or the payment thereof."

*Rooney*, *Pace*, *Hirschfeld*, and *Stein* indicate that the range of actions establishing venue and criminal tax liability is broad. In the instant case, it is probable that the government will be able to present sufficient evidence to establish venue for the Tax Counts by a preponderance of the evidence.

In *Rowe*, 414 F.3d at 278, the Second Circuit, citing *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999), counseled courts considering venue to first identify the conduct constituting the offense, and then discern the location of the commission of the criminal acts. *See* 414 F.3d at 278 (citing *Rodriguez-Moreno*, 526 U.S. at 279). With regard to the conduct constituting the offense, defendant asserts that he subscribed his tax returns in the Southern District. The evidence is unclear at this time as to whether defendant knew the content of the returns were false as a result of his charged conduct in the

19

Eastern District. As to the location of the commission of the criminal acts, the government's proof is likely to include evidence of defendant not just "subscrib[ing]" but also "mak[ing]" the tax returns, specifically where and how he transmitted information to his accountant that was necessary to the making of his allegedly false tax returns, including information from his Eastern District pharmacy.

If defendant communicated with or provided information to, his tax preparer regarding his tax liability from the Eastern District, this could be sufficient to support venue. If defendant transmitted or caused the transmission of the financial information from defendant's Eastern District pharmacies to defendant's accountant in the Southern District for the purpose of preparing the tax returns charged in the indictment, venue could be established in the Eastern District. *See Pace*, 314 F.3d at 351-52 (hinging venue on a single response to a tax questionnaire sent by the defendant from the venue of prosecution). *Hirschfeld* in turn provides that venue for a § 7206(2) prosecution could be appropriate if defendant claimed expenses based on documents created in the Eastern District. *See* 964 F.2d at 321. As noted above, proof by a preponderance of the evidence using only circumstantial evidence would suffice to establish venue consistent with the Constitution, statutes, and

venue rules. *See Rommy*, 506 F.3d at 118-19; *Conteh*, 2 F. App'x at 203-04.

The record before the court has not yet established that defendant engaged in any of the aforementioned acts, but because of the wide range of possible actions triggering liability and venue under 26 U.S.C. §§ 7206(1) and (2), and because of defendant's extensive contacts with the Eastern District, venue for the Tax Counts in the Eastern District is highly likely to be proven by a preponderance of the evidence at trial. Defendant has indisputably maintained substantial contacts in the Eastern District. The government asserts that defendant "traveled to Economy Drug in the Eastern District almost every day." (Gov't Sur-Reply at 5.) Defendant is alleged to have transferred and used the proceeds of health care fraud from his Eastern District pharmacies to purchase pharmaceuticals for his Southern District pharmacies, for which he made and subscribed tax returns. The government also alleges that defendant engaged in tax fraud using proceeds from the Eastern District pharmacies. This conduct very likely had an effect in the Eastern District.

Moreover, there can be little doubt that factfinding on these issues is at least as suitable in the Eastern District as it would be in the Southern District. *See Rowe*, 414 F.3d at

278 (considering locus of effect of criminal conduct and suitability of each district for factfinding in venue determination). The court's conclusion is further buttressed by a brief evaluation of the purpose underpinning the venue provisions: protecting "defendants from the bias and inconvenience that may attend trial in a forum other than one in which the crime was committed." *Id.* at 277; *see also United States v. Rutigliano*, 790 F.3d 389, 399 (2d Cir. 2015). There is no reason to believe that a jury in the Eastern District is more likely to convict defendant and even less reason to believe that he is appreciably inconvenienced by having to defend this prosecution in the Eastern District instead of the Southern District. He does not, because he cannot, argue otherwise.

At the very least, the venue determination is premature at this stage of the litigation, a conclusion reinforced by the fact that the government is not limited at trial to the venue allegations in the indictment. *See United States v. Nguyen*, 507 F. App'x 64, 66-67 (2d Cir. 2013) (unpublished) ("[T]rial evidence supported the venue arguments that the government articulated for the first time in its closing and rebuttal and, though these facts were not set out in the indictment, they were consistent with the core of criminality to be proven at trial. [Defendant] should have

anticipated the use of these proofs in establishing venue."
(citations omitted)).[11]

If the government at trial should fail to present
sufficient evidence to establish venue, defendant may renew his
objection then. *See United States v. Mapp*, No. 95-CR-1162, 1996
WL 506933, at *12 (E.D.N.Y. Sept. 3, 1996) ("If after the
Government's case, the proof fails to establish venue as
properly outlined in the bill of particulars, the defendants are
invited to renew their venue objections pursuant to Rule 29(a)
of the Federal Rules of Criminal Procedure."); *United States v.
Chalmers*, 474 F. Supp. 2d 555, 575 (S.D.N.Y. 2007) (same);
*United States v. Ayeki*, 289 F. Supp. 2d 183, 187-88 (D. Conn.
2003) (same).[12]

---

[11] Certainly, on these facts, defendant could have anticipated —
where the indictment was brought in the Eastern District — that the
government would present evidence at trial to prove venue for the Tax
Counts in the Eastern District. An unconstitutional and prejudicial
variance between the trial evidence and the indictment is therefore
unlikely, at least to the extent defendant might argue that he could
not have anticipated *any* evidence being offered to prove venue for the
Tax Counts in the Eastern District. *See United States v. Kaplan*, 490
F.3d 110, 129 (2d Cir. 2007). ("[A] variance is immaterial — and hence
not prejudicial — where the allegation and proof substantially
correspond, where the variance is not of a character that could have
misled the defendant at the trial, and where the variance is not such
as to deprive the accused of his right to be protected against another
prosecution for the same offense.").

[12] Courts in this circuit also routinely find defendants' pre-
trial motions to transfer or dismiss for lack of venue premature where
additional evidence may be presented at trial demonstrating the
propriety of venue. *See Chalmers*, 474 F. Supp. 2d at 575 ("[W]hether
there is sufficient evidence to support venue in this District is
appropriately left for trial. At that time, the Government will have

In this case, defendant's central argument appears to
be rooted in the language of the Tax Counts themselves. Each of
the indictment's Tax Counts charges violations occurring "within
the Southern District of New York." (*See* Indictment ¶¶ 38, 40,
42.) The highly specific venue allegation in each of these
counts contrasts with the more inclusive language in the other
counts. For example, the money laundering counts charge conduct
"within the Eastern District of New York and elsewhere."
(Indictment ¶¶ 34, 36.) Similarly, the health care fraud count
and the false claims counts allege the presentation of false
claims "within the Eastern District of New York and elsewhere."
(*Id.* ¶¶ 30, 32.)

The court recognizes the textual problem presented by
the indictment's language. Each of the Tax Counts in the
indictment, however, reallege and incorporate the health care
fraud and false claims allegations linking the tax fraud to the
underlying health care fraud and false claims at Economy Drug.
(*See* Indictment ¶¶ 37, 39, 41.) Moreover, as noted earlier, the
government is not limited in proving venue to the allegations in

to prove venue by a preponderance of evidence and the Government has
represented that it will prove additional facts at trial to support
the Indictment's allegation of venue." (citations omitted)); *see also*
*United States v. Bronson*, No. 05-CR-714, 2007 WL 2455138, at *4
(E.D.N.Y. Aug. 23, 2007); *United States v. Peterson*, 357 F. Supp. 2d
748, 752 (S.D.N.Y. 2005); *United States v. Szur,* No. 97-CR-108, 1998
WL 132942, at *9 (S.D.N.Y. Mar. 20, 1998).

the indictment. *See Nguyen*, 507 F. Appx at 66-67. For these reasons, in addition to those outlined above, defendant's motion to dismiss the Tax Counts for improper venue is denied without prejudice to renewal under Fed. R. Crim. P. 29.

## II. *The Government's Motion in Limine*

Even if the court eventually grants defendant's possible renewed motion to dismiss the Tax Counts at trial, the government seeks to introduce evidence of the underlying facts which form the basis of the tax-related charges. In light of the court's ruling that the Tax Counts are properly venued in the Eastern District, it would seem unnecessary to reach the government's motion in limine seeking to introduce evidence regarding the Tax Counts. Should defendant successfully renew his motion at a later time to dismiss the Tax Counts for lack of venue, however — thereby raising the specter of the tax-related evidence affecting other issues in the trial — the court will rule now on the government's pending motion in limine to introduce evidence regarding the Tax Counts.[13] For the reasons

---

[13] *See Palmieri v.* Defaria, 88 F.3d 136, 141 (2d Cir. 1996) ("The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence . . . ."). Evidentiary rulings made in advance of trial may be altered as "the case unfolds." *Luce v. United States*, 469 U.S 38, 41-42 (1984) ("Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."); *see also United*

explained more fully below, even if the Tax Counts are dismissed for improper venue in the Eastern District, the evidence relating to the Tax Counts, including but not limited to defendant's failure to report certain income, would be admissible as direct evidence of health care fraud, false claims, money laundering or, alternatively, as other acts evidence admissible under Fed. R. Evid. 404(b) to prove defendant's knowledge, motive and absence of mistake that the funds were the proceeds of illegal activity.[14]

The indictment charges that defendant falsely billed health insurance plans including Medicare and Medicaid over $5.8 million for pharmaceuticals ostensibly dispensed by Economy Drug. (Gov't Mot. at 2-3.) The government claims that the Economy Drug and EDS pharmacies never purchased or dispensed these pharmaceuticals and that Mr. Barrett used $4.2 million of the fraud proceeds to purchase drugs for pharmacies in the Southern District owned by either defendant or his wife, thereby converting the proceeds and manipulating their tax liabilities. (*Id.;* Indictment ¶ 27.). He then allegedly withdrew funds from accounts associated with the Southern District pharmacies for

---

*States v. Nekritin*, No. 10-CR-491, 2011 WL 2462744, at *1 (E.D.N.Y. June 17, 2011).

[14] For purposes of deciding the government's motion, the court will assume that the Tax Counts are not properly venued in the Eastern District.

his personal benefit "while falsely claiming the funds were used to pay business related expenses." (Indictment ¶ 28.) The government charges that defendant did not claim these funds as personal income on his tax returns. (*Id.*)

Evidence must be "relevant" to be admissible. Fed. R. Evid. 402. The Federal Rules of Evidence characterize relevant evidence broadly as evidence bearing on a consequential fact and having "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Even if the evidence meets this standard, however, it may be excluded if its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### A.    *Admissibility as Direct Evidence of Money Laundering*

The government first argues that evidence of the defendant's tax fraud, "used to conceal his ill-gotten gains resulting from his health care fraud scheme . . . is part of the same series of transactions as the charged offense, is also inextricably intertwined with evidence of the charged offenses, and completes the story of the defendant's fraudulent scheme." (*See* Gov't Mot. at 3-4; Indictment ¶ 33-36.) Defendant contends that the allegations are unrelated, and that defendant's alleged

27

tax fraud relates to actions wholly divorced from the alleged health care fraud. (*See* Def. Resp. at 2-3; *see also* Def. Reply at 4-6.)

"Evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (internal quotation marks and citation omitted). Failure to report significant sums of money in tax filings can be direct evidence of and is relevant to defendant's participation in, money laundering. In *United States v. Monaco*, which involved a money laundering prosecution, the government introduced evidence that the defendants "had been spending money in amounts significantly in excess of earnings reported by them on tax returns and Social Security earnings reports." *See* 194 F.3d 381, 387 (2d Cir. 1999). The Second Circuit upheld the admission of the tax-related evidence. *Id.* at 387–88. Similarly, in *United States v. Black*, the government sought to introduce evidence of a defendant's uncharged failure to report income in his tax filings as direct evidence of a charged money laundering

28

conspiracy. *See* No. 13-CR-316, 2014 WL 5783067, at *4-5 (E.D.N.Y. Nov. 5, 2014). The court determined that the "failure to report significant sums of money in tax filings is not 'other crimes' evidence under Rule 404(b). Instead, this failure to report is direct evidence of said offense, as it is inextricably intertwined with the defendant's participation in the money laundering conspiracy."[15]

Here, the defendant is charged with laundering money derived from health care fraud at Economy Drug in Queens by purchasing pharmaceutical products for his wife's B&P Pharmacy in the Bronx and defendant's Clarkstown pharmacy in West Nyack, New York. He then allegedly deposited those profits into bank accounts he controlled for B&P and Clarkstown, and wrote checks to himself from those pharmacy accounts into his personal bank accounts. The government contends that defendant misrepresented the nature of the proceeds as business expenses on his tax

---

[15] Other circuits have taken a similar approach in finding uncharged tax fraud relevant to charged money laundering. *See, e.g.*, *United States v. Romero-Lopez*, 695 F.3d 17, 23 n.4 (1st Cir. 2012) ("As a general rule, failure to report income on tax returns is relevant evidence in a money laundering conspiracy case."); *United States v. Mitchell*, 613 F.3d 862, 866 (8th Cir. 2010) ("Failure to file tax returns is relevant to the existence of, and a defendant's participation in, a money laundering conspiracy."); *United States v. Puig-Infante*, 19 F.3d 929, 940 (5th Cir.) (finding that a failure to file tax returns, even in years preceding the charged money laundering offenses, was relevant to money laundering conviction because the tax returns provided evidence of differential between legitimate income and cash outflow), *cert. denied*, 513 U.S. 864 (1994).

returns. According to the government, the final link in the money laundering chain leading to defendant's personal bank account is the alleged tax fraud, which involved transfers of ill-gotten gains by defendant to accounts he controlled, and checks written from B&P and Clarkstown accounts directly to defendant that were falsely claimed as business expenses.

Therefore, even if the tax fraud charges are ultimately dismissed for lack of venue, the alleged tax fraud "arose out of the same transaction or series of transactions as the charged offense," "is inextricably intertwined with the evidence regarding the charged offense," and is "necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 44 (internal quotation marks and citation omitted). Evidence of transfers of funds and unreported income is relevant to whether defendant knowingly and intentionally concealed the proceeds of the alleged health care fraud and false claims, and thus engaged in money laundering. *See Black*, 2014 WL 5783067, at *4-5; *Romero-Lopez*, 695 F.3d at 23 n.4 ("As a general rule, failure to report income on tax returns is relevant evidence in a money laundering conspiracy case."). In addition, the evidence is relevant to establishing consciousness of guilt for the health care fraud and false claims allegations. *See United States v. Hatfield*, 685 F. Supp. 2d 320, 324 (E.D.N.Y. 2010) (admitting

30

alleged but uncharged tax fraud in securities fraud prosecution
because the defendants' failure to report certain earnings to
the IRS "demonstrates [their] consciousness of guilt").

Defendant correctly notes, however, that the 2010 tax
returns the government seeks to introduce predate the charged
health care fraud that allegedly began in January 2011. Although
the 2010 returns just scarcely predate the time frame of the
charged fraud, the government offers no argument to admit the
2010 returns in the event the Tax Counts are dismissed. The
Second Circuit has admitted evidence concerning conduct
predating that charged in the indictment. *See Carboni*, 204 F.3d
at 44 (in prosecution for false statements made to secure a
loan, affirming the admission of evidence that defendant
manipulated accounting information before the charged fraudulent
statements occurred because it was inextricably intertwined with
the charged conduct and not subject to Fed. R. Evid. 404(b));
*United States v. Sanchez*, 518 F. Supp. 2d 615, 616 (S.D.N.Y.
2007) (noting that gap of nine years between prior acts and
charged offense "is not sufficient by itself to preclude its use
at trial if other relevant criteria are satisfied").

The government's lack of argument to admit the 2010
tax returns, however, either as direct, inextricably intertwined
evidence or Fed. R. Evid. 404(b) evidence relevant to the health

31

care fraud and money laundering counts, warrants exclusion of the 2010 returns if the government cannot establish venue for the Tax Counts. In that circumstance, the court will instruct the jury to disregard the 2010 tax returns and evidence relating thereto. The subsequent tax returns are admissible as direct evidence of the other charged conduct, or alternatively, pursuant to Fed. R. Evid. 404(b) to show knowledge that the funds were proceeds of the charged fraud and were the subject of financial transactions relating to money laundering. *See infra* Part II.C.

Defendant urges that the Tax Counts are a "separate and intervening fraud" involving the "masking of personal expenses as deductible business expenses." (Def. Reply at 4.) The instant case, however, is entirely distinguishable from the cases cited by defendant in support of his "separate, intervening fraud" argument. (*See* Def. Reply at 5-6.) In *United States v. Cadet*, for example, the court precluded the introduction of evidence of the defendant's own personal tax history to prove that he had aided and assisted in preparing others' tax returns. *See* No. 08-CR-458, 2009 WL 2959606, at *2 (E.D.N.Y. Sept. 11, 2009), *aff'd*, 664 F.3d 27 (2d Cir. 2011). In *United States v. Nekritin*, the court denied — on relevance and Fed. R. Evid. 403 grounds — the government's request in a health

care fraud prosecution to admit evidence concerning a completely unrelated administrative overpayment proceeding in which the medical provider-defendant appealed a finding by Medicare of overpayment to the predecessor-owner of the defendant's medical practice. *See* No. 10-CR-491, 2011 WL 2462744, at *2-4 (E.D.N.Y. June 17, 2011).

Similarly, in *United States v. Impasto*, the court refused to permit the government to introduce evidence of the defendant's tax fraud between 1999 and 2004 in an indictment primarily charging him with using his position as a parish council member to profit from contracts offered by that parish beginning in 2005 for post-Hurricane Katrina debris removal. *See* 535 F. Supp. 2d 732, 734-35 (E.D. La. 2008). The court determined that the "alleged tax-related bad acts [were] at best joined by the intent of greed, which is a generalized, vague intent and is not directly probative of the Defendant's intent to commit the specific crimes alleged here of fraud and money laundering." *Id.* at 736.

In each of the foregoing cases cited by defendant, the government sought to introduce evidence that was disconnected — factually in each case, and temporally in *Nekritin* and *Impasto* — from the schemes in the charged crimes. By contrast, the charged

tax fraud in this case involves the precise funds[16] obtained through defendant's alleged fraud and money laundering activities. The charged tax fraud was the logical terminus of defendant's alleged fraudulent scheme and the avenue by which defendant allegedly obtained the unlawful funds for his own personal use. *Compare* Gov't Sur-Reply at 6 ("Filing false tax returns . . . allowed [defendant] to conceal the proceeds of health care fraud that the defendant perpetrated at Economy Drug."), *with Impastato*, 535 F. Supp. 2d at 735 (noting no "evidentiary overlap" in the evidence because "the money received in the alleged debris removal scheme is not the same money that [was] involved in the Tax Counts" (internal quotation marks and citation omitted)). Consequently, the evidence concerning tax fraud is admissible as direct evidence relevant to the health care fraud, false claims, and money laundering, even if the Tax Counts were not properly venued in the Eastern District.

### B. **Fed. R. Evid. 403**

Pursuant to Fed. R. Evid. 403, the court next balances the probative value of the evidence against the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

---

[16] The only exception is the 2010 tax return, discussed *supra*.

evidence." Defendant argues that the introduction of the evidence of tax fraud "presents the very real potential both to confuse and overwhelm the jury." (Def. Reply at 5; *see id.* at 6 ("The false business deduction tax fraud portion of the trial would certainly be complex, involving accounting issues and expert testimony.")). Specifically, defendant contends that the court should exclude the evidence under Fed. R. Evid. 403 because its probative value is substantially outweighed by the danger of "confusing the issues" and "misleading the jury."

The government counters that the probative value of the evidence to establish defendant's knowledge that the funds were the proceeds of illegal activity outweighs the risk of prejudice because the tax return evidence does not "involve conduct more inflammatory than the charged crime[s]." (Gov't Sur-Reply at 7 (quoting *United States v. Paulino*, 445 F.3d 211, 223 (2d. Cir. 2006)).). The court agrees with the government's argument. There is nothing inherently more incendiary, sensational, or prejudicial about the charged tax fraud than the charged health care fraud, false claims, and money laundering. *See United States v. Watts*, No. 09-CR-62, 2011 WL 167627, at *6 (S.D.N.Y. Jan. 11, 2011) (noting that evidence of similar frauds is "routinely admissible" in fraud cases and allowing evidence of tax fraud where defendant was accused of, among other

35

offenses, violating RICO and conspiring to commit money laundering); *see also United States v. Reese*, 933 F. Supp. 2d 579, 582 (S.D.N.Y. 2013) (admitting evidence of a defendant's prior convictions and past testimony where they did not involve conduct "'any more sensational or disturbing' than the charged offenses." (quoting *Sanchez*, 518 F. Supp. 2d at 616)).

The court further respectfully disagrees with defendant's argument that the evidence regarding his taxes would confuse the issues or mislead the jury. Even assuming — as the court has done throughout its evidentiary analysis — that the Tax Counts were not properly venued here, the evidence related to the Tax Counts speaks strongly to how the alleged fraud and money laundering were carried out, and would give the jury a complete picture of defendant's motive and how he personally benefitted from the charged conduct. It is therefore highly relevant. Defendant claims he will be forced to defend against the tax evidence with a "reliance on the accountant" defense that will create a "trial within a trial." (Def. Reply at 5.) Although defendant cites no case law supporting his position, the central question here is whether "certain proof and the answering evidence that it provokes might unduly distract the jury from the main issues." 1 McCormick On Evid. § 185 (7th ed. 2013). The court is not convinced that the tax evidence will be

so tangential to the main disputes that it would risk confusing the issues or misleading the jury. Further, the court finds that there is nothing particularly unique about the purported tax fraud charges in this case, and that the regular admission of evidence concerning tax fraud in money laundering and other fraud-related prosecutions, *see, e.g.*, *Black*, 2014 WL 5783067, at * 4–5; *Watts*, 2011 WL 167627, at *6; *see also Monaco*, 194 F.3d at 387–88, counsels against a conclusion that the tax-related evidence would distract or confuse the jury.

### C. *Admissibility Under Fed. R. Evid. 404(b)*

Alternatively, in the event the court dismisses the Tax Counts at a later time for lack of venue, the tax fraud evidence, except relating to the 2010 return, is admissible under Fed. R. Evid. 404(b) to prove defendant's plan, lack of mistake, and knowledge that the funds were the proceeds of illegal activity.

Rule 404(b) permits the use of crimes, wrongs, or other acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The Second Circuit follows an "inclusionary rule" permitting the "admission of such evidence for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies"

Fed. R. Evid. 403's balancing test. *See United States v. Greer*, 631 F.3d 608, 614 (2d Cir. 2011) (internal quotation marks and citation omitted). When the government seeks to introduce evidence of other crimes to establish the defendant's knowledge or intent, "the government must identify a similarity or connection between the two acts." *Paulino*, 445 F.3d at 223 (internal quotation marks and citation omitted); *see also United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009).

Here, the government's evidence of tax fraud is interrelated with and relevant to defendant's knowledge, plan, lack of mistake and motive to engage in the charged conduct. To prove the money laundering charges at issue here (*see* Indictment ¶¶ 35-36), for example, the government must show that defendant knew the proceeds were obtained from illegal activity, the alleged health care fraud and false claims, and that he engaged in financial transactions designed to conceal and disguise the nature, location, source, or ownership of the funds. *See* 18 U.S.C. § 1956(a)(1)(B)(i); *United States v. Campbell*, 977 F.2d 854, 857 (4th Cir. 1992) (a conviction under § 1956(a)(1)(B)(i) requires "proof of the defendant's knowledge of two separate facts: (1) that the funds involved in the transaction were the proceeds of illegal activity; and (2) that the transaction was designed to conceal the nature of the proceeds").

The alleged tax fraud evidence in this case would tend to show that defendant sought unlawfully to conceal or disguise fraudulently obtained income from taxation, from which a jury could find that defendant knew the proceeds at issue in the health care fraud, false claims, and money laundering counts derived from illegal activity. *See, e.g.*, *Black*, 2014 WL 5783067, at *5 (holding that "failure to report significant income makes the occurrence of money laundering more likely"); *see also Mitchell*, 613 F.3d at 866 ("Failure to file tax returns is relevant to the existence of, and a defendant's participation in, a money laundering conspiracy."). Accordingly, the court finds a "similarity or connection between the two acts" that makes the tax fraud evidence relevant to "establishing knowledge of the [money laundering]." *McCallum*, 584 F.3d at 475 (internal quotation marks and citation omitted). As noted above in the court's discussion concerning the admissibility of the alleged tax fraud as direct evidence of health care fraud, false claims, and money laundering, there is no colorable Fed. R. Evid. 403 objection. Accordingly, except for the 2010 tax returns, the evidence of tax fraud would be admissible even if there is insufficient evidence to find that the Tax Counts are properly venued in the Eastern District.

### III. *Bill of Particulars*

Defendant next seeks a bill of particulars identifying unindicted co-conspirators and providing additional information about the allegedly unauthorized refill prescriptions. (Def. Mot. at 4–6.)

The Federal Rules of Criminal Procedure empower courts to "direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). A bill of particulars is a "formal written statement by the prosecutor providing details of the charges against the defendant," 1 *Wright & Miller* § 130, and its purpose is to enable a "defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (internal quotation marks and citation omitted).[17] Courts can also look beyond the four corners of the indictment in evaluating whether a bill of particulars is necessary. "[T]he court must determine whether the information sought has been provided elsewhere, such as in other items provided by discovery, responses made to requests for particulars, prior proceedings, and the indictment

---

[17] Fed. R. Crim. P. 7(f) was amended in 1966 — eliminating a requirement that defendants show cause when seeking a bill of particulars — for the express purpose of encouraging "a more liberal attitude by the courts toward bills of particulars." Fed. R. Crim. P. 7 advisory committee's note to 1966 amendment; 1 *Wright & Miller* § 132.

itself." *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995).

### A. *Identities of Unindicted Co-Conspirators*

One court has noted that "the precedents furnish little help in disposing of requests for bills of particulars in criminal cases," *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000) (internal quotation marks and citation omitted), and there are no hard and fast rules for whether the government must turn over the identities of unindicted co-conspirators. *Compare, e.g.*, *United States v. Coffey*, 361 F. Supp. 2d 102, 122 (E.D.N.Y. 2005) ("Courts have been highly reluctant to require a bill of particulars when defendants have asked for specific identities of co-conspirators or others allegedly involved." (collecting cases)), *with United States v. Failla*, No. 93-CR-294, 1993 WL 547419, at *7 (E.D.N.Y. Dec. 21, 1993) ("The request for the names of unindicted co-conspirators is a fairly common request and one that is generally granted by the district courts." (collecting cases)); *see also United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009) ("There is no clear rule in the Second Circuit as to when a bill of particulars for unindicted co-conspirators should be granted."); *United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000) ("A review of the case law in this district

reveals no clear distinction among circumstances in which courts grant a request for the names of known unindicted co-conspirators and circumstances in which they do not.").

In spite of this ambiguity, the decision about whether to require the government to disclose unindincted co-conspirators is not entirely without standards. Courts regularly employ a six-factor test to evaluate the propriety of disclosure, looking to:

> (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation.

*Kahale*, 789 F. Supp. 2d at 372 (quoting *Nachamie*, 91 F. Supp. 2d at 572); *United States v. Falkowitz*, 214 F. Supp. 2d 365, 390–92 (S.D.N.Y. 2002) (applying the six-factor *Nachamie* test in evaluating demand for names of unindicted co-conspirators); *United States v. Amendolara*, No. 01-CR-694, 2002 WL 31368279, at *5 (S.D.N.Y. Oct. 21, 2002) (same); *United States v. Lino*, No. 00-CR-632, 2001 WL 8356, at *12–13 (S.D.N.Y. Jan. 2, 2001) (same); *see also* 1 Orfield's Criminal Procedure Under the Federal Rules § 7:137.

A careful analysis of these factors suggests that the government should be required to produce the names of the known unindicted co-conspirators.[18] First, it is uncertain how many co-conspirators are involved here. Defendant appears unaware of the quantity and argues that "[t]he number of unindicted co-conspirators potentially is quite large." (Def Mot. at 6.) The indictment repeatedly provides that defendant operated his alleged scheme "together with others." (*See* Indictment ¶¶ 25, 30, 32, 34, 36.) The indictment's allegations in the health care fraud count, the false claims counts, and the money laundering counts — all of which suggest the participation of unindicted co-conspirators — might involve the same co-conspirators, entirely different co-conspirators, or different subsets of the same general group. The potential for unfair surprise looms large here, and this factor therefore counsels strongly in favor of a bill of particulars regarding unindicted co-conspirators. *See Kahale*, 789 F. Supp. 2d at 372 (granting bill of particulars seeking information about unindicted coconspirators where the "number of potential co-conspirators is potentially large as there are four indicted defendants and an unknown number of

---

[18] Of course, the government need not identify *unknown* co-conspirators. *See Nachamie*, 91 F. Supp. 2d at 573; *United States v. Mannino*, 480 F. Supp. 1182, 1185 (S.D.N.Y. 1979) (granting request for names "of all co-conspirators . . . to the extent these persons are known to the Government only").

unindicted individuals"); *Nachamie*, 91 F. Supp. 2d at 573 ("Providing the names of known unindicted co-conspirators . . . will prevent unfair surprise.").

The second factor, which looks to the duration and scope of the alleged conspiracy, counsels against a bill of particulars. The scheme is charged to have lasted only about two years (though the government has indicated in its briefing on a different issue that the scheme may have existed for some time longer (*See* Gov't Sur-Reply at 6)). *See United States v. Joseph*, No. 02-CR-1589, 2003 WL 22019427, at *1-2 (S.D.N.Y. Aug. 26, 2003) (indictment covering approximately three years of criminal activity represents short duration); *United States v. Reddy*, 190 F. Supp. 2d 558, 570 (S.D.N.Y. 2002) (same). Further, virtually all of the alleged activity occurred within the New York metropolitan area. *Compare, e.g.*, *Bin Laden*, 92 F. Supp. 2d at 236 (permitting bill of particulars where indictment covered 10-year conspiracy and over 10 countries).

The remaining factors, however, each favor defendant's position. The government has not provided notice — in the indictment or elsewhere — of the names of the alleged co-conspirators and the volume of pre-trial disclosure is quite large (according to defendant, the "equivalent of at least tens of thousands of pages of documents"). (*See* Def. Mot. at 5). In

addition, the government has not articulated any potential danger to co-conspirators or any possible harm to an ongoing investigation, which is particularly relevant because this trial was initially scheduled to begin in November 2015. (*See* ECF No. 41.) The government is therefore ordered to provide defendant with a list of known unindicted co-conspirators within 30 days of this order.

### B. *Further Prescription Refill Information*

In two sentences in his briefing (Def. Mot. at 6), defendant requests more information regarding the allegedly unauthorized prescriptions and refills. The government specifically mentions in the indictment the dates, prescriptions, and amounts associated with the seven alleged false claims. (Indictment ¶¶ 31-32.) Additionally, the government has represented that it has "provided to the defense each claim the defendant submitted regarding the three undercover patients." (Gov't Resp. at 8.) Because defendant cites no authority directly supporting his request, and because the information provided in the indictment coupled with the information provided to defendant in discovery appears more than adequate to permit him to mount an effective defense with respect to allegedly unauthorized prescriptions and refills, defendant's request is respectfully denied. *See United States v.*

*Jones*, No. 00-CR-182, 2000 WL 1448640, at *2 (S.D.N.Y. Sept. 28, 2000) (denying request by defendants, in prosecution for conspiracy to violate federal narcotics laws, for bill of particulars detailing dates, times, and places of alleged sales of prescription drugs).

## IV. *Requests for Early Document Disclosure*

Defendant finally seeks disclosure or identification 60 days before trial of the following material: (1) *Giglio* / Jencks Act material; (2) documents the government intends to offer at trial; and (3) the government's witness list.[19] (See Def. Mot. at 6-9.) Fed. R. Crim. P. 16(a)(1)(E) requires the government to permit the defendant to inspect and to copy or photograph documents and objects in the government's possession, custody, or control if the item is (1) material, (2) will be used in the government's case-in-chief, or (3) if the item was taken from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E). The rule is silent on the timing of disclosure.

### A. *Giglio* **and** *Jencks Act Material*

Defendant cites no case law, statute, or rule supporting his request for *Giglio* and Jencks Act material 60

---

[19] Defendant initially sought the government's Fed. R. Crim. P. 404(b) evidence 60 days before trial, but the government subsequently provided notice and moved to introduce such evidence in a motion in limine. (*See* Gov't Mot. at 1-5; *see also* Gov't Resp. at 10.) Consequently, defendant's request, as noted earlier, is moot.

days in advance of trial. The government has stated that it will "comply with its existing policies and will deliver such material two weeks before trial." (Gov't Resp. at 10.) That policy comports closely with disclosures approved in other cases. *See United States v. Harris*, No. 00-CR-105, 2000 WL 1273720, at *2 (S.D.N.Y. Sept. 7, 2000) ("The government has also agreed to produce all *Giglio*, *Brady* and 18 U.S.C. § 3500 material on the Friday preceding the week a witness is scheduled to testify at trial and all other crimes evidence which it will seek to admit at trial pursuant to Rule 404(b) of the Federal Rules of Evidence two weeks before trial."); *see also United States v. Gotti*, No. 02-CR-743, 2004 WL 602689, at *15 (S.D.N.Y. Mar. 26, 2004) (requiring government to produce § 3500 material and *Giglio* material on a rolling basis beginning four weeks before trial and ending two weeks before trial); *United States v. Santiago*, 174 F. Supp. 2d 16, 40 (S.D.N.Y. 2001) (permitting government to provide defendants with *Giglio* and Jencks Act material "by the close of business on the Friday before trial begins").

Further, the disclosure of Jencks Act material is prescribed by statute and the Second Circuit has long held that trial courts are not authorized to contravene the statute's requirements. *See United States v. Coppa*, 267 F.3d 132, 145 (2d

47

Cir. 2001) ("We have previously held that [the] Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements."). The Constitution mandates only that impeachment material be disclosed "in time for its effective use at trial." *Coppa*, 267 F.3d at 146; *see also United States v. Weaver*, 992 F. Supp. 2d 152, 160 (E.D.N.Y. 2014) (same); *United States v. Castellaneta*, No. 06-CR-684, 2006 WL 3392761, at *2 (S.D.N.Y. Nov. 20, 2006) (refusing to order early disclosure of § 3500 material and noting that Jencks Act actually "prohibits courts from ordering disclosure prior to the conclusion of a witness's direct testimony"). Consequently, defendant's request for disclosure of *Giglio* and Jencks Act material 60 days before trial is denied.

### B. *Case-in-Chief Documents*

Defendant next requests identification of documents the government plans to use at trial. Defendant relies on *United States v. Turkish*, 458 F. Supp. 874, 882 (S.D.N.Y 1978), for the proposition that where the government provides thousands of documents to a defendant in advance of trial and where the trial will likely involve substantial reliance on documents, the government has an obligation to identify the documents on which it will rely in its case-in-chief.

The reasoning of *Turkish*, however, has been called into serious question by subsequent cases, and has never been adopted by the Second Circuit. *See Nachamie*, 91 F. Supp. 2d at 569 ("The *Turkish* court cited no authority for its conclusion that the Government had an obligation to identify the documents it intended to use in its case-in-chief, and it mistakenly relied on another district court case . . . which merely held that the Government had a duty to *produce* such documents."); *see also United States v. Ferguson*, 478 F. Supp. 2d 220, 243-44 (D. Conn. 2007); *United States v. Kaplan*, No. 02-CR-883, 2003 WL 22880914, at *20-21 (S.D.N.Y. Dec. 5, 2003) (denying motion for identification of government's case in chief documents as not required under current version of Rule 16); *Reddy*, 190 F. Supp. 2d at 571 ("It is clear that [Fed. R. Crim. P. 16(a)(1)(E)] does not require the government to identify specifically which documents it intends to use as evidence. It merely requires that the government produce documents falling into the three enumerated categories." (citation omitted)).[20]

---

[20] The court recognizes the problems associated with "document dumps" in white collar criminal cases. Commentators have recognized the dangers created where the government produces a large body of discovery material. *See* Robert G. Morvillo et al., *Motion Denied: Systematic Impediments to White Collar Criminal Defendants' Trial Preparation*, 42 Am. Crim. L. Rev. 157, 160 (2005); *see generally* Sara Kropf et al., *The "Chief" Problem with Reciprocal Discovery Under Rule 16*, Champion, September/October 2010. Some of these commentators have also recognized the inconsistencies in the case law. *See* Sheila

Even assuming the court has the authority to require the government to identify the documents it plans to use in its case-in-chief, the court would not use its discretion to order the government to identify these documents at this time. The indictment itself contains information about the specific prescriptions alleged to have been improperly filled, and the government has represented that it provided defendant additional information in later productions. From that information, defendant should be able to identify the most relevant documents. In addition, although the government has stated that it will identify the documents it intends to introduce two weeks before trial (Gov't Resp. at 11), the court's pretrial order directs the parties to exchange a list of exhibits 45 days before trial. The request for identification of the government's case-in-chief documents 60 days in advance of trial is denied.

---

Sawyer, *Is 'It's in There Somewhere' Enough? Defining the Scope of the Government's* Brady *Obligations in 'High-Volume Discovery' Prosecutions*, 24 White-Collar Crime Rep. 1, 4 (2009) ("Some older district court decisions have . . . required the government to separate its discovery production into the categories identified in Rule 16. More recent decisions, however, have rejected the holdings of those cases as inconsistent with the plain language of Rule 16." (footnotes omitted)). Ultimately, the court "has no license to rewrite the Federal Rules of Criminal Procedure. While it might be wise for the Advisory Committee on Criminal Rules to consider an amendment that would require a party to identify those documents it intends to use in its case-in-chief, no such requirement now exists in the plain language of the Rule." *Nachamie*, 91 F. Supp. 2d at 570.

### C.  Witness List

Defendant lastly seeks production of the government's tentative witness list 60 days in advance of trial. (Def. Mot. at 8-9.) Although there is no general right to pretrial disclosure of the government's witness list, *see United States v. Bejasa*, 904 F.2d 137, 139-40 (2d Cir. 1990), "federal courts have held that Rule 16 does not preclude the exercise of their inherent authority to require pretrial disclosure of witness identities where such disclosure is justified by the circumstances of the particular case." Wayne LaFave et al., 5 Criminal Procedure § 20.3(h) (3d ed. 2007); *United States v. Cannone*, 528 F.2d 296, 299 (2d Cir. 1975) ("The general discretion of district courts to compel the government to identify its witnesses is acknowledged widely . . . .").

In the particular circumstances of this case, which allegedly involves a highly complex health care fraud scheme with multiple false claims and entities, a 32-count indictment, and voluminous documents produced to defendant, the court concludes that defendant is entitled to a preliminary witness list. *See United States v. Rueb*, No 00-CR-91, 2001 WL 96177, at *7-9 (S.D.N.Y. Feb. 5, 2001) (requiring disclosure of witness list based on voluminous document production and three-year period covered by indictment); *United States v. Rosenthal*, No.

91-CR-412, 1991 WL 267767, at *4 (S.D.N.Y. Dec. 3, 1991) (requiring disclosure where there was substantial documentary evidence, underlying events spanned several years, and the pool of potential witnesses was large).

On the record before the court, the principal concerns underpinning decisions not to disclose — e.g., witness intimidation and subornation of perjury, see *Coffey*, 361 F. Supp. 2d at 122 — are not present. *Compare, e.g., Cannone*, 528 F.2d at 301-02 (finding abuse of discretion in district court's decision to release witness list where "two defendants had already been indicted for obstructing justice by beating a grand jury witness," defendant presented no specific evidence of his need for the list, and the court provided no "meaningful explanation" for granting the defense's motion seeking the government's witness list).

Defendant does not demand (*see* Def. Mot. at 8 n.2), and the court would not require, that the government adhere absolutely to this list at trial. The government must simply in good faith — at least 45 days in advance of trial — disclose to defendant a list of likely witnesses. The court's pretrial order

also directs both parties to submit lists of potential witnesses 45 days in advance of trial, by February 19, 2016.[21]

## CONCLUSION

In sum, defendant's motion to dismiss the Tax Counts for lack of venue is DENIED. The government's related motion to admit the evidence of tax fraud, assuming improper venue for the Tax Counts, is GRANTED, except as to the 2010 tax returns. Defendant's motion for a bill of particulars is GRANTED to the extent it seeks the identities of known, unindicted co-conspirators (this must be done within 30 days of the issuance of this order) and DENIED to the extent it seeks more specific information about the allegedly unauthorized prescription refills.

Finally, defendant's requests for early disclosure of *Giglio* and Jencks Act material and a specification of the government's case-in-chief documents are DENIED, but the request for early disclosure of a witness list is GRANTED in part. The government must disclose the witness list at least 45 days in advance of trial. Both parties are reminded to adhere to the most recent pretrial scheduling order, which the court will

---

[21] Early disclosure here is not only premised on the parties' trial preparation; it will also serve to simplify the jury selection process.

publish at the same time as this order, and to exchange their exhibits in accordance with the order.

**SO ORDERED.**

Dated:      December 23, 2015
            Brooklyn, New York

                                    _____/s/_____
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge